# EXHIBIT

# A

2:23-cr-00517-DLR-1, April 4, 2023

1        **UNITED STATES DISTRICT COURT**

2        **FOR THE DISTRICT OF ARIZONA**

3
**United States of America**,            )
4                                         )
                         Plaintiff,       )   2:23-cr-00517-DLR-1
5                                         )
                vs.                       )   Phoenix, Arizona
6                                         )   April 4, 2023
**Josephine Barlow Bistline**,            )   9:57 a.m.
7                                         )
                         Defendant.       )
8        _____)

9
**BEFORE:   THE HONORABLE MICHAEL T. MORRISSEY, MAGISTRATE JUDGE**
10
                **TRANSCRIPT OF PROCEEDINGS**
11
                **DETENTION HEARING/STATUS HEARING**
12

13                    A P P E A R A N C E S
      For the Government:
14            **JILLIAN BESANCON, ESQ.**
              **LINDSAY L. SHORT, ESQ.**
15            U.S. Attorney's Office (Phoenix)
              40 N. Central, Ste. 1800
16            Phoenix, AZ 85004-4408
              602.514.7500
17
      For the Defendant:
18            **MARK A. PAIGE, ESQ.**
              Paige Law Firm
19            2733 N. Power Rd., Ste. 102 PMG 440
              Mesa, AZ  85215-1683
20            602.254.5457/(fax) 602.324.8291

21    Transcriptionist:
      **Elaine Cropper**
22    Sandra Day O'Connor U.S. Courthouse
      401 West Washington Street, SPC 35
23    Phoenix, Arizona  85003-2150
      602.322.7245
24
      Proceedings Recorded by Electronic Sound Recording
25    Transcript Produced by Transcriptionist

2:23-cr-00517-DLR-1, April 4, 2023

1                       **P R O C E E D I N G S**

2            (Proceedings begin at 9:57 a.m.)

3            (The defendant is present, in custody.)

4            (All counsel are present in the courtroom.)

5            COURTROOM DEPUTY:  This is case number MJ23-04056,

6   the *United States of America v. Josephine Barlow Bistline*,

7   before the Court for a detention hearing and status hearing

8   regarding preliminary hearing.

9            MS. SHORT:  Good morning, Your Honor.

10            MS. BESANCON:  Good morning, Your Honor.  Jillian

11   Besancon and Lindsay Short on behalf of the United States.

12            THE COURT:  Good morning.

13            MR. PAIGE:  And good morning, Your Honor.  Mark Paige

14   on behalf of Ms. Bistline who is present as well.

15            THE COURT:  Good morning to you, Mr. Paige, and to

16   your client.

17            Mr. Paige, let's deal with the status on the

18   preliminary hearing first.  How would you like to proceed?

19            MR. PAIGE:  We would like to schedule a preliminary

20   hearing, Your Honor.

21            THE COURT:  Okay.

22            COURTROOM DEPUTY:  How soon?

23            THE COURT:  Mr. Paige, how soon would you like that?

24            MR. PAIGE:  I could do it this week I suppose.

25            THE COURT:  Okay.  Let's see what we've got

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1   available.

2           MR. PAIGE:  Okay.

3           COURTROOM DEPUTY:  Is 30 minutes enough time?

4           THE COURT:  That would be quick.  Let me ask

5   Ms. Besancon.

6           30 minutes, can you get it done in 30 minutes?

7           MS. BESANCON:  That's fine, Your Honor.

8           THE COURT:  Okay.

9           Mr. Paige, do you anticipate a lengthy cross at that

10  type of hearing?

11          MR. PAIGE:  It could take a few minutes.

12          THE COURT:  Do we have a 45-minute slot?

13          COURTROOM DEPUTY:  We could do a 9:15 versus a 9:30.

14          THE COURT:  Okay.  On what day?

15          COURTROOM DEPUTY:  On Friday.

16          THE COURT:  Okay.  Mr. Paige, 9:15 on Friday.

17          MR. PAIGE:  Yes, Your Honor.

18          THE COURT:  All right.  And that will be before me so

19  that's Friday, I think Friday is the seventh.

20          All right.  And then, Ms. Besancon, the Government's

21  position is what on detention?

22          MS. BESANCON:  The Government is seeking detention.

23          THE COURT:  Mr. Paige, how do you intend to proceed

24  today on detention?

25          MR. PAIGE:  I don't have witnesses.  I'm interested

2:23-cr-00517-DLR-1, April 4, 2023

 1   to hear the Government's witnesses or arguments with respect to

 2   detention.

 3            THE COURT:  Well, let me ask this, Mr. Paige.

 4            MR. PAIGE:  Sure.

 5            THE COURT:  Your client was not interviewed by

 6   Pretrial Services and it's -- I just -- I'm not going to have a

 7   basis to release her without a Pretrial Services interview.

 8            Now, I understand you get to make strategic

 9   decisions.  So I guess my question is, strategically, do you

10   want to maintain that position that your client will not

11   interview with Pretrial Services or do you, now that some time

12   has passed, you're on the case, do you want to have your client

13   interviewed by Pretrial Services?

14            MR. PAIGE:  Well, Your Honor, I would say a couple of

15   things.  One, her not interviewing with them was not a

16   strategic decision that was made by counsel.  I'm not sure why

17   the interview didn't take place but it didn't take place.

18            My second suggestion would be that I don't -- I'm not

19   aware from the case law or from the statutes that an interview

20   with Pretrial Services is necessary to the issue of release.

21            If the Court deems that it's essential to the Court's

22   making a decision, then we could have her interviewed and

23   address this on Friday.

24            THE COURT:  Nope.  It's -- I agree with you there's

25   no case law that requires it.  I have less information than

2:23-cr-00517-DLR-1, April 4, 2023

1  normally before me.  But we're set for a detention hearing and

2  if you're ready to go, we'll go.  Okay.  So Ms. Besancon, do

3  you intend to proceeded by proffer?

4            MS. BESANCON:  Yes, Your Honor.

5            THE COURT:  All right.  Go ahead.

6            MS. BESANCON:  Thank you, Judge.  The Government does

7  intend to proceed by proffer and we would proffer all of the

8  facts in the complaint as well as some additional materials all

9  discussed that had been provided in discovery to defense

10  counsel.  Those include some additional emails that were sent

11  by the defendant to an Assistant Attorney General -- to the

12  AUSA on a different prosecution.

13            THE COURT:  Let me ask, are your -- is the thrust of

14  your comments going to be to flight, danger, or both.

15            MS. BESANCON:  Both, Your Honor.

16            THE COURT:  Okay.

17            MS. BESANCON:  Just to give the Court some general

18  background on the case, this defendant is tied to a larger case

19  that is currently pending from Judge Campbell which is *USA v.*

20  *Samuel Bateman*.  Mr. Bateman is a self-proclaimed prophet of

21  the Fundamentalist Church of Latter Day Saints who is believed

22  to have more than 20 wives.

23            Mr. Bateman and three of those wives have been

24  charged with crimes including obstruction of justice and

25  kidnapping.  This defendant is another of Mr. Bateman's wives.

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1          In September of 2022 --

2          THE COURT:  But she's not charged with kidnapping on

3   any of those?

4          MS. BESANCON:  She is not.

5          In September of 2022, a federal search warrant was

6   executed at the residences associated with the defendant's and

7   nine children were taken in to DCS custody.  This defendant is

8   the mother of two of those children.  This defendant has

9   repeatedly sent emails to DCS staff as well as the AAG assigned

10  to the case concerning the custody issue.  Some of those emails

11  are quoted in the complaint.

12         In November of 2022, eight of the nine minors in

13  DCS custody went missing.  They were found several days later

14  with one of the three wives who has been charged in Spokane,

15  Washington, and three of the wives, in addition to Mr. Bateman,

16  were charged with kidnapping related to that.

17         THE COURT:  But does that connect to Ms. Bistline?

18         MS. BESANCON:  Just for general context on the case,

19  Your Honor.

20         THE COURT:  Okay.

21         MR. PAIGE:  Your Honor, I would object to this

22  because, as the Court as pointed out, it's connected only in

23  the sense that my client is allegedly connected to Mr. Bateman.

24  But it has nothing to do with the two Class D felonies.

25         THE COURT:  It's in the complaint, though, so it may

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1  be repetitive but there's no objection to sustain, so

2  overruled.

3          MS. BESANCON:  So this defendant has come --

4          THE COURT:  I'm not getting any younger.  Can you

5  speak up?  You are very soft-spoken.

6          MS. BESANCON:  This defendant has come to one of the

7  residences where the children were kept to try to see one of

8  the minor -- the minors in the case and she has escalated her

9  communications to now physical threats to one of the

10 DCS workers.  And that is the email that is quoted in complaint

11 that is in bold about that individual spending time in prison

12 on a ventilator.  That complaint was filed the same day the

13 email was sent, on March 24.

14          On the early morning of March 25 -- and this is not

15 in the complaint -- this defendant sent another email to the

16 AUSA who is the lead attorney on Mr. Bateman's case.

17          That email made comments, the AUSA's name:  Just

18 reaching out.  I need you to understand God knows you're

19 wickedness for what you are doing to Samuel and his little

20 flock.  You shall pay for it dearly.  Mark it.  God will not

21 allow you to use the money for anything, not even toilet paper,

22 and you will watch some random off the street step into your

23 life, take your house, your car, your boat, your family, your

24 hobby, everything you own, or think you own, and use and blow

25 them to the four winds of the earth.  Your house will be left

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1  desolate and your family and friends will laugh at your

2  calamity.  Who would sell their neighbor's children for a

3  profit?  What kind of a heathen are you?

4          The email continues:  I personally will not be

5  satisfied with just the return of the girls.  We are going

6  right to the top and we are putting down agencies, all of them,

7  that are not constitutional and right.  The children are to be

8  returned home now.  We are done.  You may take it cheerfully or

9  you can ignore it and fight it.  You choose.  Feel the spirit

10  of it.

11          The email continues, and I'm just excerpting parts of

12  the email:  To hell with due process.  That's not legal either.

13  Drop it.  I want you to know we are innocent.  We also know

14  that you know we are innocent.  So pursue for money and wow.

15  Watch God show this entire nation your wickedness.

16          In addition, the defendant has sent emails to the

17  AAG involved in the DCS case.  One of those emails sent back in

18  November says in part:  These girls are pure and clean by the

19  love and grace of God.  You will not have the power to lift

20  your own spoon or wipe your own nose save you confess to the

21  world and repent of your wicked doings.

22          So, Your Honor, on the basis of some of these emails

23  that were sent to the DCS worker specifically, this defendant

24  has been charged with making interstate threat to injure on the

25  basis of those ventilator statements as well as cyberstalking

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1   for this ongoing pattern of sending these emails to the
2   DCS workers.

3          The weight of the evidence is strong because the
4   threats were communicated in writing.  They speak for
5   themselves.

6          I would also add, the Court may not be aware of this,
7   that this defendant was arrested at CoreCivic when she went to
8   visit one of the other witnesses.  She kicked and punched the
9   arresting FBI agents resulting in minor injuries to at least
10  one of the agents.  She may ultimately be indicted on assault
11  of a federal officer, but I have not seen that video yet and
12  can't represent to the Court's what the future charges would be
13  there.

14         The Government submits that no condition or
15  combination of conditions can reasonably assure the appearance
16  of this defendant.  She declined to participate in a Pretrial
17  Services interview.  There is no information about where she
18  would reside, none of her social information, and there's no
19  way to determine if she would comply with the directives of the
20  Pretrial Services officer.

21         THE COURT:  Well, there is a given address, though,
22  and it's an Arizona address in the Pretrial Services Report.

23         MS. BESANCON:  Yes, Your Honor.  I think that is an
24  address in Colorado City.  It's our understanding that the
25  defendant has been making regular trips to CoreCivic to visit

2:23-cr-00517-DLR-1, April 4, 2023

1  the individuals who are incarcerated there.  So it's believed

2  it's possible that she's residing somewhere more locally in

3  order to make those visits, but I can't speak to the Court one

4  way or the other because the Government does not know where she

5  is residing.

6          THE COURT:  Okay.

7          MS. BESANCON:  And for these reasons, Your Honor,

8  Pretrial Services is recommending detention.  Without this

9  information, with the defendant's refusal to participate in the

10 interview, the Court is unable to fully evaluate her history

11 and characteristics to determine her suitability for release.

12         The content of these emails further shows that the

13 defendant has no respect for the Government or the rule of law.

14 There is no basis that -- to believe that she would respect the

15 conditions here which she has threatened those involved in the

16 dependency case involving her children and told the AUSA

17 involved in the Bateman prosecution to drop it.

18         Further, Your Honor, the Government does have concern

19 for the safety of the community.  In particular, danger to the

20 minors who have now been returned to DCS custody as well as to

21 the victims who she sent these emails to.

22         The defendant has sent emails to several Government

23 employees who are people who are doing their jobs and the

24 defendant has been trying to intimidate them to prevent them

25 from undertaking their duties and upholding the law.

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1    The content of the emails also raises the possibility

2    of these girls in DCS custody again being kidnapped.  As the

3    Court can see from the complaint, she is given deadlines:  You

4    have three days, return the nine girls to the greenhouse, or at

5    least taking further action to obstruct justice.

6         And then, Your Honor, finally, her non-compliance

7    with arrests and her actions towards the FBI agents who were

8    arresting her shows she's a danger to law enforcement.

9         THE COURT:  Was there a report on that?

10        MS. SHORT:  We don't have -- we have an FBI report

11   and we have two photos of the injuries.  We do not yet have a

12   video.

13        THE COURT:  Was that report turned over to Mr. Paige?

14        MS. SHORT:  Yes.

15        THE COURT:  Okay.

16        MS. BESANCON:  Your Honor, this shows that arresting

17   her was dangerous to law enforcement, even when that was done

18   at the controlled environment that was inside the CoreCivic

19   visitor area.

20        So for all of those reasons, we are seeking detention

21   for this defendant.  If the Court is inclined to release the

22   defendant, we do have some proposed conditions.

23        THE COURT:  Okay.  Thank you.

24        Mr. Paige?

25        MR. PAIGE:  Your Honor, we would request the Court

2:23-cr-00517-DLR-1, April 4, 2023

1  release my client.  About maybe 99 percent of the Government's

2  argument for keeping her in detention is the accusations that

3  are made against her.  Now, we have case law on this.  We have

4  statutes.  The statutes say that there's a presumption of

5  release and the Supreme Court has said there's a presumption

6  for release and the Ninth Circuit has said there's a

7  presumption for release.  And the Supreme Court in the *Salerno*

8  decision way back in 1987 -- it's not even new -- said liberty

9  is the norm.

10      These courts have also said that the weight of the

11  evidence is the least important factor.  And it cites to also

12  goes to the -- excuse me one moment -- to the Ninth Circuit's

13  decision in *Motamedi* or *Motmedi*, however one wants to pronounce

14  it, back in 1985.  So these things we know.  Their entire

15  argument is based on the least important factor.

16      And in fact, for the purposes of these hearings,

17  we're to presume the person is guilty of what they are accused

18  of.  Even though they are innocent until proven guilty, for the

19  purposes of this hearing, we're to presume that they are guilty

20  and then we're also supposed to presume that release is the

21  norm or liberty is the norm.

22      And in this case, Your Honor, many of these

23  accusations are just that.  They are accusations.  One could

24  maybe look at these emails and have a different opinion of the

25  Government, whether they are threats or not threats.

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1     For example, the Government just read excerpts from
2  one that was sent on March 25 where they read an excerpt that
3  said we're going to the top and we are putting down agencies,
4  all of them, that are not constitutional and right.

5     And the paragraph just before that says:  In your
6  case, the FBI got involved so you felt pretty safe.  We found
7  also that DCS and FBI are not Government agencies.  So when we
8  go to sue, it will be individuals, not the agencies.  Pretty
9  good way to cover your backside but they messed with the wrong
10 family.

11    These other emails also has references to suing.
12 They have searches to God and that God will punish wickedness
13 and so forth.

14    So all of these things have to go -- have to do with
15 the least important factor.

16    In addition, under the statute, the release, the
17 conditions of release are not conditions that are intended to
18 guarantee that someone will appear or will not be a danger of
19 any sort to any person or the community.  They are to
20 reasonably assure.

21    And if there's a violation, then she should be
22 treated the same as everybody else is when they are released
23 and they violate.  A petition to revoke, bring her back to the
24 Court and then the Court will decide if her release should be
25 continued on additional conditions or she should be detained at

2:23-cr-00517-DLR-1, April 4, 2023

1   that point.

2           But at this point, what we do know about her from the

3   Pretrial Services Report is that she has no criminal history.

4   She's charged with two pretty low-level felonies, Class D

5   felonies.  There are only -- E is the lowest level of felony.

6   So they are both statutory maximum five-year offenses.  Sent an

7   email to the Pretrial Services officer who filed this report

8   yesterday and informing her of a handful of general things;

9   that she has been unemployed since 2018.  So even if a person

10  called to verify that, if someone going to be lie about being

11  unemployed when they were really employed?  That doesn't make

12  any sense.  She was unemployed since 2018 and she had left her

13  job because she was home schooling a child who was starting to

14  misbehave a bit, so she felt it important to be back home being

15  more closely supervising that.

16          I told the Pretrial Services in the email that with

17  respect to health concerns, so I was going down their list here

18  in their report, health concerns, she did have some health

19  concerns but nothing that has been diagnosed by a doctor.  So

20  again, even if somebody goes to try to confirm that, what are

21  they going to confirm, that she's been diagnosed with cancer

22  and lied about that?  That doesn't make any sense.

23          And I informed them that she's not taking any

24  medications.  On the substance abuse, I informed them that he

25  does not use alcohol or drugs.  Given her background, which the

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1    Government has put in the probable cause statement and

2    mentioned here today, being a member of the Church of Latter

3    Day Saints or the Fundamentalist Church of Latter Day Saints, I

4    suppose it's not surprising that she doesn't drink or use

5    drugs.

6            So -- and finances, she doesn't have any.  Well, she

7    has a public defender that's appointed to represent her.

8            So none of these things are shocking, none of them

9    require further interview or further investigation or anything

10   else.  They just are as they are.

11           THE COURT:  Mr. Paige, though, you're not addressing

12   ties to the community, length of time in the community, and any

13   of those matters and they are relevant.

14           MR. PAIGE:  Yes.  She's lived in the same location in

15   Colorado City -- excuse me, because I've misplaced that

16   information.

17           I'm sorry.  I'm sorry about that, Your Honor.  I had

18   that information.

19           THE COURT:  That's all right.

20           MR. PAIGE:  The Colorado City area location, she's

21   lived there since she was born.  And she does have various

22   family members that live there.  In fact, I was contacted by

23   one of them but I haven't had a chance to call that individual

24   back.

25           So she has ties to the community in that she's lived

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1    there basically -- well, since she was born in Colorado City.

2            In addition, Your Honor, when it comes to release, I

3    think we need to keep another thing in perspective and that is

4    that I have been representing people in this courthouse since

5    2002 so 20 -- whatever that is, 21 years, and I've had people

6    accused of drug-trafficking, human trafficking, sexual assault,

7    child pornography, even homicide be released.  She's charged

8    with two Class D felonies they have a stat max of five years.

9    She has no criminal history, no substance abuse history,

10   life-long resident of Arizona.  There's no reason that she

11   shouldn't be released with some level of conditions.

12           And if she sends another email and has contact with

13   anybody in this situation, then we agree, that's a violation

14   and she'll be back before the Court and then she may not have

15   any choices.  But she's informed me that whatever conditions

16   the Court imposes, that she's going to follow those conditions.

17           So we would urge the Court to release her with

18   appropriate conditions.

19           Thank you, Your Honor.

20           THE COURT:  Mr. Paige, do you -- do you dispute the

21   contact with the AUSA?

22           MR. PAIGE:  I'm not disputing it, no.

23           THE COURT:  Okay.  Let me ask.  I don't see in the

24   Pretrial Services Report, approximately how old is your client?

25           MR. PAIGE:  She is 39.

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1      Is that correct?

2      THE COURT:  Okay.  All right.

3      MR. PAIGE:  I saw her date of birth someplace.

4      THE COURT:  That's okay.  I missed it.  I was just

5  trying to get some sense of the length of time in the

6  community.

7      So okay.  I'll take your proffer on that.  Thank you,

8  Mr. Paige.

9      MR. PAIGE:  Thank you.

10      THE COURT:  Ms. Besancon?

11      MS. BESANCON:  Thank you, Judge.  I understand that

12  Mr. Paige has now proffered here some information that would

13  have been relevant in a Pretrial Services Report.  The

14  defendant made the decision not to give an interview to

15  Pretrial Services.  The information today is yet unverified, in

16  particular, that she is currently living in Colorado City

17  rather than here in the Phoenix area while making these visits

18  to Florence.

19      THE COURT:  Well, I'm not sure I heard him say

20  exactly that.  What I heard him say, I thought, was strength of

21  ties to the community, life-long resident of Colorado City,

22  Arizona.

23      MS. BESANCON:  I think the question remains is that

24  if she's released today, where is she going to be living?  And

25  there has been no address provided about where she's going to

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1  live, who she's going to be living with, what her finances are,
2  what her travel history is.  She did not want to speak to
3  Pretrial Services.

4          THE COURT:  Okay. Ms. Besancon, you've made that
5  point.  I understand she didn't speak to Pretrial Services.
6  But that also is not a requirement.  So the issue is, how does
7  that tie to potential flight risk?  And the defense has pointed
8  out that she has strong ties to Arizona.

9          Do you have a response to that point?

10         MS. BESANCON:  Well, we still don't know where she is
11  living I guess is the number one point.  Secondly, it would be
12  difficult for Pretrial Services to supervise someone who will
13  not communicate with them.  And, Your Honor, to the point of
14  the emails could be interpreted differently as showing a threat
15  to sue someone and considering how the emails could be
16  construed, it's here in writing.  She says:  Your prison
17  experience will be behind a ventilator.  Three days, nine
18  girls, greenhouse or wear the honorary badge of physical
19  assistance.

20         That's not threatening to sue someone.  That's
21  threatening to harm someone.

22         So although this does relate to the strength of the
23  evidence, it also concerns her danger to the community, her
24  danger to the DCS workers, and her lack of respect for the
25  legal process.  Thank you.

United States District Court

2:23-cr-00517-DLR-1, April 4, 2023

1           THE COURT:  Thank you, Ms. Besancon.

2           All right.  Ms. Bistline, I find that you are a

3   danger.  It may be of the factors that strength of the case is

4   the least significant.  It is still a significant factor.

5   That's how it got to be a factor.  And threats, if credited, to

6   put people on ventilators and threats, the other threats in the

7   complaint do show, and the Government's argument has proven by

8   clear and convincing evidence, that you would be a danger to

9   people involved in this case, whether it's the DCS workers or

10  the AUSA.  These are significant threats.  And so I do find

11  that you are a danger.

12          I do not find at this point that you are a flight

13  risk.  You do have significant ties to the community, a

14  life-long Arizona resident and an established residence where

15  you can live, and so it's the Court's finding that you will be

16  detained as a danger but not a flight risk at this point.

17          Mr. Paige, anything further?

18          MR. PAIGE:  No, Your Honor.  Thank you.

19          THE COURT:  All right.

20          Ms. Besancon?

21          MS. BESANCON:  No, Your Honor.  Thank you.

22          THE COURT:  All right.  We are adjourned.

23          (Proceedings concluded at 10:23 a.m.)

24

25

United States District Court

C E R T I F I C A T E

      I, ELAINE M. CROPPER, court-approved transcriber, certify that the foregoing is a correct transcript, to the best of my skill and ability, from the official electronic sound recording of the proceedings in the above-entitled matter.

      DATED at Phoenix, Arizona, this 10th day of April, 2023.


                                   s/Elaine M. Cropper

                                _____

                                 Elaine M. Cropper


                 United States District Court