2:23-CR-00517-SMB-1, May 3, 2023

1        **UNITED STATES DISTRICT COURT**

2        **FOR THE DISTRICT OF ARIZONA**

3
         **United States of America**,         )
4                                              )
                           Plaintiff,          )
5        vs.                                   )
                                               )   2:23-CR-00517-SMB-1
6        **Josephine Barlow Bistline, also**   )
         **known as Jomie B**,                 )
7                                              )
                           Defendant.          )
8                                              )   May 3, 2023
                                               )   2:29 p.m.
9        _____     )

10              **BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE**

11             **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

12                        STATUS HEARING

13              A P P E A R A N C E S

14       For the Government:
                 **JILLIAN BESANCON , ESQ.**
15               U.S. Attorney's Office
                 40 North Central Ave., Ste. 1800
16               Phoenix, AZ  85004-4408
                 602.514.7500
17
         For the Defendant:
18               **MARK A. PAIGE, ESQ.**
                 Paige Law Firm
19               2733 N. Power Rd., Ste. 102 PMB 440
                 Mesa, AZ  85215-1683
20               602.254.5457/(fax) 602.324.8291

21       Official Court Reporter:
         **Elaine Cropper, RDR, CRR, CCP**
22       Sandra Day O'Connor U.S. Courthouse, Suite 312
         401 West Washington Street, SPC 35
23       Phoenix, Arizona  85003-2151
         (602) 322-7245
24
         Proceedings Reported by Stenographic Court Reporter
25       Transcript Prepared by Computer-Aided Transcription

                    United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1                    **P R O C E E D I N G S**

2              (Court was called to order by the courtroom deputy.)

3              (Defendant is present and in custody.)

4              (Both counsel are present in the courtroom.)

5              (Proceedings begin at 2:29.)                          02:26:34

6              THE COURT:  Thank you.  Please be seated.

7              COURTROOM DEPUTY:  This is criminal case number CR

8    23-517, *United States of America v. Josephine Barlow Bistline*,

9    set before the Court for a motion hearing.

10             MS. BESANCON:  Good afternoon, Your Honor.  Jillian    02:30:14

11   Besancon for the United States.

12             THE COURT:  Good afternoon.

13             MR. PAIGE:  Good afternoon, Your Honor.  Mark Paige

14   with Ms. Bistline who is present as well.

15             THE COURT:  Good afternoon.                           02:30:21

16             And good afternoon, Ms. Bistline.

17             Is that the correct pronunciation of your name?

18             THE DEFENDANT:   (Witness shakes head.)

19             THE COURT:  What is the correct pronunciation?

20             THE DEFENDANT:  Bateman.                              02:30:35

21             THE COURT:  Oh, Bateman.  Okay.  All right.  You

22   prefer I call you Ms. Bateman?  I will do that.

23             All right.  We've got three matters that we need to

24   address today and I apologize for changing your schedule at the

25   last minute, Mr. Paige, but there wasn't enough time to cover    02:30:52

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

| | | |
|---|---|---|
| 1 | all of these in the half-hour that I had at 1 o'clock.  The | 02:30:57 |
| 2 | first thing we need to address is the motion for change of | |
| 3 | counsel.  The motion to withdraw by Mr. Paige.  Secondly, the | |
| 4 | motion for review of detention, which is now fully briefed; and | |
| 5 | then, third, the motion for a protective order that has been | 02:31:15 |
| 6 | filed by the Government. | |
| 7 | The motion to withdraw, Mr. Paige, is based on your | |
| 8 | indication that Ms. Bateman wishes to represent herself.  Is | |
| 9 | that still the case? | |
| 10 | MR. PAIGE:  Yes, Your Honor. | 02:31:31 |
| 11 | THE COURT:  Okay.  It seems to me this is not a | |
| 12 | matter for which we need to clear the courtroom as we would if | |
| 13 | it was an issue between you and her.  Do you agree with that? | |
| 14 | MR. PAIGE:  Yes.  I don't know that any | |
| 15 | attorney-client communications will necessarily be discussed. | 02:31:45 |
| 16 | THE COURT:  Okay.  If you think we need to at any | |
| 17 | point, then let me know. | |
| 18 | MR. PAIGE:  Thank you, Your Honor. | |
| 19 | THE COURT:  What I would like to do with respect to | |
| 20 | the request to represent yourself, Ms. Bateman, and Mr. Paige | 02:31:54 |
| 21 | is a couple of things.  It seems to me the first step that I | |
| 22 | ought to take is to give Ms. Bateman a *Foretta* warning to make | |
| 23 | sure -- well, first to ask some questions and then to give her | |
| 24 | a *Foretta* warning to make sure she really wants to do it. | |
| 25 | Secondly, if Ms. Bateman really does want to | 02:32:18 |

2:23-CR-00517-SMB-1, May 3, 2023

1   represent herself, as the attorneys here know, the Supreme                  02:32:21

2   Court has said that there is a different level of competency

3   required to represent yourself than just to stand trial.  In

4   the *Edwards* case, the Supreme Court said that the level of

5   mental capacity needed to represent yourself is higher than the   02:32:40

6   mental competency needed to stand trial and the Ninth Circuit

7   has addressed that in the *Johnson* cases and some others.

8           So the second step I would want to take, if

9   Ms. Bateman really does want to represent herself after

10  receiving a *Foretta* warning, would be to have her evaluated by   02:32:55

11  a psychologist or a psychiatrist to ensure that she has the

12  mental capacity to represent herself.  And if so, then and if

13  she were, obviously, at that point willing and able to

14  represent herself, then I could grant the motion.  But I think

15  I would still be inclined if we did that, Mr. Paige, to appoint   02:33:15

16  you as stand-by counsel so she would have a resource if she

17  needed it to legal issues that are likely to arise in the case.

18          Mr. Paige, do you see any problem with my proceeding

19  through those issues in that order?

20          MR. PAIGE:  I do not, Your Honor.  I would say that        02:33:32

21  if it comes to appointing stand-by counsel, that I would

22  request that it be somebody other than myself; but other than

23  that, I don't have anything.

24          THE COURT:  Why don't we talk about that if we get to

25  that point?                                                        02:33:49

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1      All right.  Ms. Bateman, I need to ask you some           02:33:58

2 questions about your desire to represent yourself I seem to

3 have left on my desk in my chambers so I'm going to go grab

4 those and I'll be right back.  Just one sec.

5      COURTROOM DEPUTY:  All rise.                              02:35:48

6      THE COURT:  Please be seated.

7      All right.  Ms. Bateman, let me ask you some

8 questions.  These are not intended to ask unnecessary questions

9 or pry into your personal affairs.  In fact, they won't really

10 get into that; but I just want you to understand that I'm      02:36:12

11 asking these because I'm required to so that I can make a

12 decision about whether you should represent yourself.

13      Have you ever studied law in any form?

14      THE DEFENDANT:  Yes.

15      THE COURT:  Can you tell me what that is?                02:36:24

16      THE DEFENDANT:  Studied law in any form?

17      THE COURT:  I mean, is it just personal study or have

18 you ever actually attended classes related?

19      THE DEFENDANT:  No.  It's all been on my own, just

20 personal.                                                      02:36:36

21      THE COURT:  Okay.  Have you ever represented yourself

22 in any kind of a court case before?

23      THE DEFENDANT:  No, sir.

24      THE COURT:  Have you read the indictment in this case

25 that sets forth the charges against you?                       02:36:52

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

| | | |
|---|---|---|
| 1 | THE DEFENDANT:  Yes. | 02:36:55 |
| 2 | THE COURT:  Do you understand that if you are found | |
| 3 | guilty of the charged crimes, you could be fined or sent to | |
| 4 | prison for a period of time for committing felonies? | |
| 5 | THE DEFENDANT:  Yes. | 02:37:11 |
| 6 | THE COURT:  Do you understand that if you represent | |
| 7 | yourself, you will be on your own, meaning I can't help you. | |
| 8 | My job is to remain neutral.  I've got to remain neutral | |
| 9 | between the two parties.  I can't step in to help you if you're | |
| 10 | asking a question incorrectly or if you're making the wrong | 02:37:34 |
| 11 | kind of a legal argument.  You really have to represent | |
| 12 | yourself. | |
| 13 | Do you understand that? | |
| 14 | THE DEFENDANT:  Yes. | |
| 15 | THE COURT:  Do you have any familiarity with the | 02:37:49 |
| 16 | Federal Rules of Evidence? | |
| 17 | THE DEFENDANT:  Federal Rules of Evidence.  Yes, I've | |
| 18 | read through them several times but -- yes. | |
| 19 | THE COURT:  You've got some familiarity with them? | |
| 20 | THE DEFENDANT:  Yes. | 02:38:06 |
| 21 | THE COURT:  How about the Federal Rules of criminal | |
| 22 | procedure? | |
| 23 | THE DEFENDANT:  They have denied that book and I | |
| 24 | really wish they would give it to me. | |
| 25 | THE COURT:  Okay.  So you haven't looked at those? | 02:38:14 |

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1      THE DEFENDANT:  I haven't got a chance to look at

2  those ones.                                                    02:38:16

3      THE COURT:  Okay.  Let me read to you, Ms. Bateman,

4  what is called a *Foretta* warning. *Foretta* simply is the name of

5  the Supreme Court case that said these are the things somebody   02:38:37

6  needs to be aware of.  You already know that.

7      So let me read this to you.  Preparing a case for

8  trial and trying a case before a jury is not simply a matter of

9  telling your story.  It requires adherence to various complex

10  and technical rules.  These include the Federal Rules of        02:38:58

11  criminal procedure, the Federal Rules of Evidence, this Court's

12  local rules of procedure and various federal statutes.  There

13  is also a vast body of case law that addresses these rules and

14  statutes.  These rules, statutes, and causes govern what

15  information you may be able to obtain before trial, what         02:39:20

16  investigators or experts you may obtain to assist you in your

17  defense, what motions you may file before trial to limit

18  evidence at trial or to have some of the charges against you

19  dismissed, and plea negotiations with the Government and

20  drafting of plea agreements.                                    02:39:41

21      There is also much more to trial than simply telling

22  your side of the story.  Trial includes preparing evidence and

23  witnesses in a form that will be admissible under the Federal

24  Rules of Evidence at trial, understanding the Government's

25  burden of proof and how the Government can be challenged in its  02:39:59

United States District Court

1    attempt to meet that burden of proof, preparing jury                    02:40:03

2    instructions for trial, choosing the jury, including voir dire

3    questioning of the jury and the exercising of peremptory

4    challenges.  Trial itself also includes objections to evidence,

5    arguments on those objections and often the need to rephrase        02:40:22

6    questions or reconfigure evidence to comply with the Rules of

7    Evidence.

8            A person who is unfamiliar with legal procedures may

9    not obtain all relevant information or resources before trial,

10   may not make appropriate motions before trial, and may allow      02:40:40

11   the prosecutor an advantage during trial by failing to make

12   objections to inadmissible evidence, failing to make effective

13   use of such rights as the voir dire of jurors and by making

14   tactical decisions that produce unintended consequences.  There

15   may be possible defenses and other rights which counsel would      02:41:02

16   be aware of and if those are not timely asserted, they may be

17   lost permanently.

18           If you are found guilty after trial, there are

19   sentencing guidelines that will be relevant to any sentence I

20   impose.                                                                          02:41:21

21           This is a copy of the Federal Sentencing Guideline

22   Manual that contains all of the provisions that apply in

23   conducting a guideline evaluation before sentencing.  These

24   guidelines are detailed and complex and have many legal cases

25   interpreting them.  Sentencing often requires the resolution of   02:41:48

1    complicated legal and factual issues during which the defense          02:41:54

2    must understand the guidelines and make relevant objections and

3    arguments.

4              A lawyer, including your defense lawyer, has

5    substantial experience and training in pretrial and trial           02:42:07

6    procedures.  The prosecution in this case will be represented

7    by an experienced attorney.

8              If you choose to represent yourself, you will be

9    responsible for complying with all applicable rules and

10   statutes.  I will not be able to help you.  I must treat you as     02:42:24

11   I would a lawyer handling a case.

12             If issues arise during trial, you will be required to

13   deal with them as they arise.  We will not interrupt or delay

14   the trial because you are representing yourself.

15             If you make mistakes in your defense, you will bear       02:42:41

16   the consequences of those mistakes.  You will not be allowed to

17   complain on appeal about the competency of your

18   self-representation.

19             In summary, I must advise you that in my opinion, a

20   trained lawyer would defend you far better than you could           02:42:58

21   defend yourself.  And I say that with no disrespect for you but

22   based on my 20 years as a judge, I have had a number of cases

23   where individuals have represented themselves, very smart and

24   capable individuals, and every one of them has gone badly for

25   the defendant because they just didn't know how to represent        02:43:17

2:23-CR-00517-SMB-1, May 3, 2023

1    themselves in a criminal case.                                    02:43:20

2            If issues arise during trial, you will be required to

3    deal with them as they arise.  If you make mistakes, you will

4    bear the consequences.

5            In summary, I think it is unwise of you to try to        02:43:33

6    represent yourself.  You can do your best to familiarize

7    yourself with the law but will you not acquire the knowledge

8    that somebody has acquired through three years of law school

9    and years of legal practice.  You can do your best to

10   familiarize yourself with court procedures and the Rules of     02:43:56

11   Evidence, but you will not be able to master them like somebody

12   who has practiced law for many years.

13           And so I strongly urge you, Ms. Bateman, not to

14   represent yourself.  I don't think it would be in your best

15   interest.                                                        02:44:12

16           Having said that, you still have a constitutional

17   right to represent yourself if you have the mental capacity to

18   do so and if you're willing to follow court procedures in your

19   representation of you.

20           In light of what I've described, the penalty you         02:44:28

21   might face if you are found guilty and the difficulties of

22   representing yourself, do you still want to represent yourself

23   and give up your right to be represented by a lawyer?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Is your decision entirely voluntary?         02:44:45

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1    THE DEFENDANT:  Yes.                                    02:44:49

2    THE COURT:  Has anybody tried to persuade you or

3    pressure you in any way to represent yourself?

4    THE DEFENDANT:  No.

5    THE COURT:  All right.  Well, I find that              02:44:58

6    Ms. Bateman, having heard this warning, has knowingly and

7    voluntarily expressed her desire to waive the right to counsel.

8    And so what I am going to do is issue an order

9    calling for a competent mental health professional to do an

10   evaluation of you, Ms. Bateman, so I can be assured that you're  02:45:19

11   not only competent to stand trial.  I believe you are, but also

12   that you have the mental capacity to represent yourself.

13   I will in the order, counsel, try to delineate those

14   different standards.  They are not clearly delineated in the

15   Ninth Circuit case law but I think I can be specific enough for  02:45:43

16   the individual you choose to provide an opinion on --

17   Mr. Paige, typically what we would do in a case where

18   somebody going to be examined is have the defense attorney

19   identify somebody to do that.  Are you all right doing that?

20   MR. PAIGE:  I do have an individual I've used a          02:45:58

21   number of times and I've asked Ms. Bateman and she's indicated

22   that she would be willing to cooperate with that individual.

23   So I don't know if you want me to identify him here or if you

24   want me to file a motion.

25   THE COURT:  Why don't you tell me who it is?            02:46:15

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1        MR. PAIGE:  Dr. Richard Samuels.                          02:46:17

2        THE COURT:  Yeah.  We've had Dr. Samuels in other

3   cases.

4        MR. PAIGE:  Yeah.  And I've used him on a number of

5   cases and he writes pretty strong reports and I'm sure he'll    02:46:25

6   take whatever it is that the Court indicates in its order and

7   focus on those things as much as possible.

8        THE COURT:  Okay.

9        So I'll get that order out and you can arrange with

10  Dr. Samuels for this to happen.                                 02:46:42

11       Sometimes, Ms. Bateman, I don't know what Dr. Samuels

12  practice' is.  Sometimes they can come to the facility where

13  you're being housed and meet with you there.  Some prefer to

14  have an individual brought here and meet with them here in

15  meeting room.  We'll do whichever Dr. Samuels prefers.         02:46:57

16       MR. PAIGE:  He has typically gone to CCA to do his --

17       THE COURT:  That will make it easier to you so you

18  won't have to be up early hours of the morning to get here,

19  Ms. Bateman.  Normally it takes about 30 days for that to

20  happen and produce a report.                                    02:47:17

21       Does that sound about right to you in this case,

22  Mr. Paige?

23       MR. PAIGE:  I think that is probably a good place to

24  start and if he needs more time, then I'll let the Court know.

25       THE COURT:  Why don't we look for a date about 45          02:47:27

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1   days out so we can have the report in hand to reconvene this          02:47:29

2   hearing on Ms. Bateman representing herself and I'll have Sara

3   find a time and we'll get the order out so that can take place.

4            And what we'll do at that next hearing, Ms. Bateman s

5   I will review the report.  If the doctor finds you have the          02:47:46

6   mental capacity to represent yourself and you continue to hold

7   the view you express today, I'll talk to you a little bit about

8   sort of Court procedures to make sure you're okay going forward

9   with those and I'll appoint -- I'll allow you to represent

10  yourself.                                                            02:48:06

11           But I will appoint stand-by counsel.  Stand-by

12  counsel is not somebody who represents you.  You still

13  represent yourself.  But it gives you a resource, somebody you

14  can turn to and say, "Well, what about this or that," and they

15  can help you.  I have found that individuals representing         02:48:20

16  themselves find that very helpful.  There are some who haven't

17  used their stand-by counsel.  They just want to do it all on

18  their own but at least that's a resource that can help.

19           And the other advantage of doing that is if you were

20  to decide down the road or I were to decide for any reason that   02:48:37

21  you shouldn't continue to represent yourself, then we've got a

22  lawyer who is familiar with the case who could step in and

23  represent you and we wouldn't delay getting this case resolved.

24           So that's the procedure we'll follow on that first

25  issue.                                                            02:48:53

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1          Ms. Besancon, did you want to add anything on all of    02:48:58

2     that?

3          MS. BESANCON:  No, Your Honor.

4          THE COURT:  All right.  So the second matter is the

5     motion for *de novo* review of detention.  I've read the    02:49:07

6     Government's motion -- pardon me, the defense motion, the

7     Government's response, and Mr. Paige's reply.

8          Mr. Paige, do you want us, you're still counsel in

9     the case.  Do you want us to go ahead and address that or do

10    you think we should postpone that until there's a decision made    02:49:29

11    on whether Ms. Bateman is representing herself for purposes of

12    this issue?

13          (Defendant confers with counsel.)

14          MR. PAIGE:  Apologize, Your Honor.

15          THE COURT:  That's all right.    02:50:24

16          MR. PAIGE:  Ms. Bateline -- Bateline, good grief.

17    Ms. Bateman says she would not want to wait until the final

18    decision is made on the pro se matter because, obviously, she

19    would like to get out of custody.

20          THE COURT:  Right.  Okay.  I've read the briefs as    02:50:43

21    I've indicated.  I want to do some additional thinking about

22    this issue.

23          Are there additional arguments that you want to make

24    with respect to it, Mr. Paige?

25          MR. PAIGE:  I don't believe so, Your Honor.  I think    02:51:00

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

| | |
|---|---|
| 1 | it's fully briefed.  The only additional arguments I would | 02:51:03 |
| 2 | make -- and not really additional, I guess it would just be |
| 3 | kind of a summary.  But from the transcript before Magistrate |
| 4 | Judge Morrissey and then filings is just simply this:  That |
| 5 | these are Class D felonies.  They are low-level felonies.  She | 02:51:25 |
| 6 | has no criminal history.  She has no substance abuse history. |
| 7 | She has a long-term permanent residence.  She has no issues, no |
| 8 | medical issues.  She's never had mental health counseling and |
| 9 | so forth. |
| 10 |         So there just isn't a basis to continue to detain | 02:51:54 |
| 11 | her.  And the idea of detaining her because she doesn't have |
| 12 | respect for the Government, the idea of detaining her because |
| 13 | the Court shouldn't wait until she acts on a threat is simply |
| 14 | inconsistent with the history of bail issues, bail reform as |
| 15 | we've cited in our various filings and discussed with the | 02:52:26 |
| 16 | Magistrate Judge.  And so Ms. Bateman would be just like |
| 17 | anybody else.  If there's an order in place, reside at this |
| 18 | residence and she absconds from there, she'll be in violation. |
| 19 | If there's an order that says, as every order does in a victim |
| 20 | case, no contact, direct or indirect, with the victims or the | 02:52:57 |
| 21 | victims' families and she violates that, she will be arrested. |
| 22 | She'll be back in fronts of the Court just like anybody else. |
| 23 |         This happens I don't know how many times a year in |
| 24 | the courts here in Phoenix that there are conditions of |
| 25 | supervised release.  If they violate them, they will be back | 02:53:17 |

2:23-CR-00517-SMB-1, May 3, 2023

1    and we'll address those things at that time.                    02:53:20

2         So we just ask the Court to as it reviews the

3    materials, to revoke the order of detention and allow her to be

4    released with appropriate conditions which I'm confident will

5    include don't send emails to anybody to DCS, to anybody else.    02:53:35

6    Apparently she has a lawyer in the state matter.  So any

7    communications there should be through her lawyer in that

8    matter.  And similarly here, there should be no sending emails

9    to prosecutors on Mr. Bateman's case or to any of the

10   prosecutors on this case.  But -- and that just seems pretty     02:54:01

11   straightforward.

12         Thank you, Your Honor.

13         THE COURT:  All right.  Thank you.

14         Ms. Besancon, do you have additional comments on the

15   briefing?                                                        02:54:14

16         MS. BESANCON:  Your Honor, the Government's position

17   is fully set forth in its briefing.  Magistrate Judge Morrissey

18   correctly determined by clear and convincing evidence that the

19   defendant is a flight risk based on the -- I'm sorry, a danger

20   to the community based on the emails she sent, her intent based  02:54:27

21   on those emails she sent, particularly the most recent email to

22   the DCS working with the ventilator comment.  Additionally,

23   Your Honor, the Government continues to believe the defendant

24   is a flight risk.

25         Mr. Paige argued today that she has a permanent            02:54:43

2:23-CR-00517-SMB-1, May 3, 2023

| | | |
|---|---|---|
| 1 | consistent residence in Arizona.  The Government does not | 02:54:46 |
| 2 | believe that she was actually living there.  At least from some | |
| 3 | more recipient DCS reports we received she expressed an | |
| 4 | interest to get a residence in Phoenix.  That's consistent with | |
| 5 | her being arrested earlier in the morning in Florence.  We | 02:55:03 |
| 6 | still do not know where the defendant is currently residing or | |
| 7 | would reside if she was released. | |
| 8 | Other than that, Your Honor, the Government relies on | |
| 9 | its briefing and the facts in the complaint. | |
| 10 | THE COURT:  Ms. Besancon, in your response you stated | 02:55:18 |
| 11 | that when Ms. Bateman was arrested, there was some sort of a | |
| 12 | physical altercation and an FBI agent was slightly injured.  I | |
| 13 | think that's all you said and I didn't see an attachment that | |
| 14 | described it.  Can you tell me what it is you're referring to | |
| 15 | there? | 02:55:40 |
| 16 | MS. BESANCON:  The defendant was arrested by two FBI | |
| 17 | agents and there was a scuffle that resulted.  They suffered | |
| 18 | some minor abrasions.  We don't expect at this time that there | |
| 19 | will be any assault charges arising from that.  It's evident | |
| 20 | from the video that she's moving her arms to try to get away. | 02:55:59 |
| 21 | There are references to kicking and it was a brief encounter. | |
| 22 | THE COURT:  And this was after they approached her? | |
| 23 | MS. BESANCON:  Yes, Your Honor. | |
| 24 | THE COURT:  Okay. | |
| 25 | All right.  I will take under advisement this motion | 02:56:15 |

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

 1    for review of detention and get an order out on that.                    02:56:17

 2         The last matter is the Government's motion for a

 3    protective order.  I have the motion which was filed on April 28

 4    and just an indication that the defense objects.

 5         Mr. Paige, can you tell me what your objection is to          02:56:35

 6    their proposed protective order?

 7         MR. PAIGE:  Your Honor, I was intending to file a

 8    response after today depending on what happened so --

 9         THE COURT:  Do you prefer to do that?  If you prefer

10    to do that, that is fine.  If you want to state your concerns       02:56:49

11    now, then we can address them.

12         MR. PAIGE:  I wouldn't mind filing a reply simply

13    because -- I mean a response simply because I would include

14    some details in that.  But as a general proposition, my

15    objection goes to -- and I had a copy here someplace of the        02:57:08

16    Government's proposed order.  But it's items I believe five and

17    six.

18         THE COURT:  So, yeah, five is prohibiting the

19    defendant and potential witnesses from retaining any of the

20    materials during the course of litigation and six is ordering     02:57:27

21    the defense team to destroy matters at the end.

22         MR. PAIGE:  Yes.  So generally, I oppose those two

23    things.

24         Now, I don't oppose not letting witnesses retain

25    something.  I don't know why I would give a witness some            02:57:45

2:23-CR-00517-SMB-1, May 3, 2023

1   document or materials for them to retain.  But in discussions        02:57:49
2   with the Government previously on this before they filed their
3   motion, my position is, if the issue is PII, personal
4   identifying information, as their motion suggests, then there's
5   no reason why the defense receives the materials unredacted.         02:58:14
6   We can review them with her of course.  But if we redact them,
7   then why shouldn't she be able to retain them?

8         So if you've got a document that it's got someone's
9   birth date in it and we redact the birth date, why should she
10  not be able to retain that document?                                 02:58:37

11        THE COURT:  When you say "we," you mean the defense?
12        MR. PAIGE:  The defense, right.  73 I then have
13  somebody appointed to do that redacting and they redact
14  documents, then there's no reason why she shouldn't be able to
15  retain those documents.  It's her case, and it's her filing and      02:58:50
16  as the Court can see, she has an interest, whether she chooses
17  to go forward pro se or not, she is deeply interested in her
18  case and reviewing the materials and so forth, and so there's
19  really no reason if we redact the documents -- the Government
20  says it's too much for them to do, well, okay.  Then we'll work      02:59:15
21  on it.  And as we work on them and get some redacted and then
22  she ought to be able to retain those.

23        So with respect to item number five, that is my
24  objection there.

25        With respect to item number six, I don't destroy           02:59:33

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

 1   documents.  I'm not destroying documents.  I've never destroyed   02:59:38
 2   documents in any case that I can ever think of.  We have
 3   responsibilities as counsel.  There are retention requirements.
 4   There are -- when does a case conclude?  When an appeal period
 5   runs?  When the appeal is over?  When a 2255 period runs?  What   02:59:54
 6   about all of the issues that have come up with 2255s and with
 7   compassionate release and so forth?

 8        I have been appointed on 2255s and compassionate
 9   release motions that the underlying case is decades old where
10   we don't have the ability to look back at certain documents and   03:00:13
11   materials that would be critical and we have to try to piece
12   together information from various court filings.  So I just
13   typically don't detroy documents.

14        Sometimes in the course of file retention after a
15   number of years, I might destroy a hard copy file.  But I'm not   03:00:34
16   just going to go and delete and don't have it.

17        I had a recent case with the Government in fact where
18   the State of California was attempting to unseal some documents
19   from a case here in order to use those for a third-strike issue
20   in California for a case that, my recollection is it was from   03:00:59
21   the nineties or something or maybe early 2000s.  I think it was
22   at least 20 years old, maybe older.  And both the Government
23   and I were trying to piece together why the matter was sealed
24   and what the purpose was and neither one of us had documents.
25   We didn't have anything.  We had to try to piece things   03:01:21

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1    together after court filings after getting orders to release                03:01:25

2    things.  So these things come up.

3              We have compassionate release matters that could be

4    10, 15 years old where documents matter.  If you end up in a

5    2255 or something and there's a new sentencing or                           03:01:37

6    re-resentencing, the discovery, what went on can be important.

7              It's not necessarily enough to just use the PSR.

8    That's one side of the issues and it's certain documents.  But

9    so destroying documents in addition, it's the client's file.

10   It's not my file.  It's the client's file.  The client has the            03:01:56

11   right -- maybe five years later or ten years later they want to

12   get a copy of their file.  I've had a couple of cases where the

13   Innocence Project has gotten involved down the road someplace

14   and they needed a copy of the file.  So it's just destroying

15   things doesn't make any sense.                                             03:02:13

16             Furthermore, I've never seen a protective order that

17   has been issued that has a sunset provision in it that says,

18   well when we bang the gavel at sentencing time, the protective

19   order is no good any more.  The protective order is a

20   protective order.  It continues to exist as long as the file             03:02:30

21   exists.

22             So there's really no reason for the materials to be

23   destroyed.  The protective order says take good care of them,

24   reasonable care essentially, so they don't end up in the wrong

25   hands and so forth.  So it's kind of like the scene from A Few            03:02:46

2:23-CR-00517-SMB-1, May 3, 2023

1  Good Men.  "If you gave an order that Santiago was not to be     03:02:53

2  touched, then why the second order?"

3        So if we have an order that says don't disclose this

4  stuff, then why would it have to be destroyed?

5        So those generally are my two objections.  In a     03:03:05

6  response I would also address what's PII?  From that I've used

7  a couple of samples.  One happens to be an order that this

8  court has issued previously and also it derives or coincides

9  with Rule 49.1 I think that talks about what has to be redacted

10 in a public filing.  And my argument is, there should be no     03:03:36

11 reason to redact anything from discovery that wouldn't have to

12 be redacted in a public filing with the Court.  Rule 49.1 lays

13 out what has to be redacted.

14       So those are things that I would address in a

15 response if the Court wanted me to file one.  But, generally,     03:03:57

16 those are the things that I disagree with.

17           THE COURT:  Ms. Besancon?

18           MS. BESANCON:  Your Honor, I do think it would be

19 helpful for Mr. Paige to file a response with the case law in

20 support of his position, so we could fully brief the issue if     03:04:14

21 the Court is inclined not to enter the current protective

22 order.

23       Regarding the issue of defense redacting the

24 discovery, I just don't think that's practical in this case

25 given the volume of materials.  We have thousands of jail     03:04:27

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

 1  videos, jail calls.  The discovery is many thousands of pages.    03:04:32
 2  We got another 3,000 pages from DCS today.  It's not practical
 3  for the Government to work on it and I know Mr. Paige doesn't
 4  have the benefit of seeing all of the information.  It seems
 5  impracticable for him to be able to redact all of those    03:04:48
 6  materials as well.  We're talking about PII cooperator
 7  information, cooperator identities, locations, photos,
 8  information concerning the child victims, including their
 9  faces, their PII, as well as all of the other individuals
10  involved in the Bateman matter.    03:05:10

11          And so in the Government's view, the defense
12  redacting all of those materials, it would stall the case.
13  It's also not consistent with the order the Court has entered
14  for the defendants in the larger Bateman investigation.

15          THE COURT:  Those weren't objected to?    03:05:34

16          MS. BESANCON:  Yes, Your Honor.  Regarding the issue
17  of about how long defense can keep the materials, this order
18  does have a term that defense counsel can retain the material
19  until the time expires for all appeals, collateral attacks,
20  other writs or motions challenging the conviction or sentence    03:05:46
21  and actions for professional malpractice.  So hopefully that
22  would address the concerns that Mr. Paige has.

23          THE COURT:  Ms. Besancon, if I grant Ms. Bateman the
24  right to represent herself, she'll have to be able to receive
25  and retain everything; right?    03:06:03

United States District Court

1      MS. BESANCON:  Your Honor, what has been done for          03:06:06

2  some of the other defendants in the Bateman investigation is

3  the personnel at the facility has a flash drive or a hard drive

4  with the discovery on it.  They can give it to a defendant for

5  review of the discovery on a laptop and then take the hard           03:06:25

6  drive back at the end.  But we would also ask the opportunity

7  to brief that additional a little bit further because we have

8  recently received information from CoreCivic that there can be

9  a way for enterprising defendants to get around that system and

10  potentially download or keep the information.  So we need to          03:06:44

11  look into that further if eventually she does end up

12  representing herself.  But that seems to be a good middle

13  ground where she can still have access to the materials, only

14  it's retained by the personnel at the detention facility.

15      THE COURT:  If we postpone entry of a protective          03:07:08

16  order, is it going to delay discovery in the case?

17      MS. BESANCON:  Yes.

18      THE COURT:  I think what I'm going to do is this.  I

19  don't want to delay discovery.  I'm going to enter the

20  protective order but I'm going to modify paragraph five to say:          03:07:38

21  The defendant and potential witnesses shall not be allowed to

22  retain any of these materials during the course of litigation,

23  but they may review them through procedures at CoreCivic that

24  have been used for other defendants so that Ms. Bateman can get

25  daily access to them.          03:07:55

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1      If she represents herself, we may need to modify                    03:07:58

2  that.  I' also going to include paragraph six.

3      But as we go forward, Mr. Paige, if you think that

4  the language is too restrictive, I will be happy to entertain

5  your recommendation on how to broaden it to take into account          03:08:12

6  the eventualities you think may arise.

7      But I want to get it entered so that the discovery

8  can go forward and we're not slowing the case down for that

9  reason.  And, obviously, if Ms. Bateman is allowed to represent

10  herself; we may have to modify it further because she's going          03:08:28

11  to need to have the access any person would to represent

12  themselves.

13      So I will do that.  You don't need to file a response

14  to the motion, Mr. Paige, but as we go over the next month or

15  two, if you think this language is too restrictive, propose a          03:08:44

16  alternative.  I'll be happy to talk about it and do what is

17  reasonable.

18      All right.  Are there any other --

19      Yeah, did you have another matter?

20      MR. PAIGE:  I have two questions on to topic, Your                  03:08:55

21  Honor.  One is perhaps more for the Government but there has

22  been some discovery that has already been provided so am I

23  correct in understanding that the protective order addresses

24  this additional discovery that results from the Bateman case

25  and excludes from it the discovery that was already provided?          03:09:24

2:23-CR-00517-SMB-1, May 3, 2023

1   And my second question, and I just wanted to make sure I          03:09:30

2   understood that the Court's order would allow the hard drive or

3   flash drive usage at CCA immediately by Ms. Bateman as it is

4   for many other defendants in other cases even though they are

5   not proceeding pro se.                                            03:09:55

6          THE COURT:  Well, what we need to do on that last

7   point, Mr. Paige, is this:  In the other case the defense

8   attorneys have spoken directly to a person at CoreCivic.

9          MR. PAIGE:  Correct.

10         THE COURT:  You may know who that person is.  If you       03:10:20

11  don't --

12         MR. PAIGE:  I know a couple of people.

13         THE COURT:  Mr. Klink says he knows this person as

14  well and has dealt with her on similar issues.  I think it was

15  a woman.  They have talked to CoreCivic to specifically arrange   03:10:33

16  for a laptop, review of the discovery materials and have made

17  those arrangements directly with CoreCivic.  I think you're

18  going to need to do that.  I don't think I can just order it

19  without you having that conversation because I want to make

20  sure that they know that you are representing Ms. Bateman, that   03:10:54

21  you are making the same kind of arrangements that have been

22  made in the other case.

23         And what I'm going to put in this order, as I

24  indicated a minute ago, is that the defendant shall be allowed

25  to review discovery at CoreCivic on a laptop under CoreCivic      03:11:09

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

 1    procedures.                                                    03:11:13

 2              MR. PAIGE:  Very well.

 3              THE COURT:  But you need to talk the details with

 4    them.

 5              MR. PAIGE:  Right.  I'll work that out.  Thanks.     03:11:18

 6              THE COURT:  What's your answer, Ms. Besancon, to

 7    Mr. Paige's first question?

 8              MS. BESANCON:  Your Honor, the first set of discovery

 9    that was disclosed is basically the emails the defendant sent

10    and those have all been sufficiently redacted, so our          03:11:35

11    preference would be for the protective order to cover all of

12    the discovery just for -- so everyone is clear about what

13    materials are discovered, but those were disclosed in the

14    absence of a protective order so that's fine.

15              And then regarding the second issue, the Court for   03:11:55

16    the other defendants did enter a two-page order with some

17    additional information about the facilitation of discovery

18    inspection at CoreCivic and included provisions like the

19    defendant cannot take notes or write down any PII.  And nothing

20    shall be construed to require overtime by CoreCivic personnel.  03:12:22

21    I think that all of those provisions in the orders previously

22    entered by the Court would also be appropriate for this

23    defendant.  Perhaps I could provide that to defense counsel.

24              THE COURT:  I remember that now.  Mr. Paige, why

25    don't you get a copy of that order?  There has been two of them 03:12:36

2:23-CR-00517-SMB-1, May 3, 2023

| | |
|---|---|
| 1 | in the other case.  If it looks okay to you, submit the same | 03:12:39 |
| 2 | order and I'll enter it for Ms. Bateman and that way she'll be |
| 3 | under the same guidelines as the other defendants are. |
| 4 |       MR. PAIGE:  Okay.  I did not see the second order in |
| 5 | that case.  I just saw the first one. | 03:12:49 |
| 6 |       THE COURT:  Yeah.  I think Mr. Klink submitted it and |
| 7 | I can't remember who the other defense counsel, but there have |
| 8 | been two that I think was virtually the same order that have |
| 9 | been approved.  So if you can submit the same, I'll be happy to |
| 10 | approve that. | 03:13:04 |
| 11 |       MR. PAIGE:  Thank you. |
| 12 |       THE COURT:  Okay. |
| 13 |       Anything else we need to address? |
| 14 |       MS. BESANCON:  We do have a trial date in a few |
| 15 | weeks, Your Honor.  I think the date on that is May 23. | 03:13:11 |
| 16 |       THE COURT:  All right.  Well, we'll need to have a |
| 17 | defense motion on that.  Obviously we're going to need to |
| 18 | continue this for some time. |
| 19 |       MR. PAIGE:  Yes.  I was waiting to see what would |
| 20 | happen.  So the motions deadline was April 28.  The trial date | 03:13:24 |
| 21 | is May 23.  So I'll get something filed on her behalf tomorrow |
| 22 | or the next day, before the end of the week for sure. |
| 23 |       THE COURT:  Okay. |
| 24 |       And Sara, what do we have for that hearing in about |
| 25 | 45 days? | 03:13:39 |

United States District Court

2:23-CR-00517-SMB-1, May 3, 2023

1    COURTROOM DEPUTY:  It might have to be a little bit    03:14:06

2 further than the 45.  45 out is June 17.  The Tuesday, June 20.

3    THE COURT:  Why don't we do it on the 20th, if that

4 works.  2 p.m. okay?

5    COURTROOM DEPUTY:  Yes.    03:14:47

6    THE COURT:  We'll set the next hearing for June 20 at

7 2 p.m. and that's when we'll discuss the self-representation.

8    Okay.  Thank you, all.

9    MR. PAIGE:  Thank you.

10    (Whereupon, these proceedings recessed at 3:15 p.m.)

11            * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States District Court

1                       C E R T I F I C A T E

2

3           I, ELAINE M. CROPPER, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7

8           I FURTHER CERTIFY that the foregoing pages constitute

9   a full, true, and accurate transcript of all of that portion of

10  the proceedings contained herein, had in the above-entitled

11  cause on the date specified therein, and that said transcript

12  was prepared under my direction and control, and to the best of

13  my ability.

14

15          DATED at Phoenix, Arizona, this 11th day of July,

16  2023.

17

18

19

20                           s/Elaine M. Cropper

21                           _____

22                           Elaine M. Cropper, RDR, CRR, CCP

23

24

25

                    United States District Court